# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                      **Case No. 08-CR-254**

**JUSTIN KIECKBUSCH**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Justin Kieckbusch with possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and possessing an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d). Defendant filed a motion to suppress the firearm, and the magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing then issued a recommendation that the motion be denied. Defendant objects, which requires me to review the matter de novo. Fed. R. Crim. P. 59(b)(3). Defendant does not request a de novo hearing, and he does not dispute the magistrate judge's recitation of the testimony. Therefore, I adopt the magistrate judge's statement of the evidence adduced at the hearing and present only an abbreviated version of events in this decision.

## I. FACTS

During morning roll call on August 10, 2008, City of Milwaukee police officers Todd Bohlen, Andrew Bell and Juan Duran received information that two Latin King gang members had been shot the night before in the area of 15th and Becher Streets. Based on gang tension, these three uniformed officers were assigned to an unmarked squad car as part of an effort to "saturate" the area.

At about 11:05 a.m. that day, as the three officers were patrolling the area around 15th and Becher, they observed defendant speed through a stop-sign and make a fast, hard right turn in front of the officers' squad car, veering into the oncoming lane of traffic and forcing Officer Bohlen, the driver, to take evasive action to avoid an accident. Bohlen turned around to pursue and observed defendant run another stop sign. Bohlen activated the squad's lights and siren to conduct a traffic stop, defendant pulled over, and Bohlen stopped about a car-length behind. The officers and defendant presented different versions of what happened next.

According to Officers Bohlen and Bell, as they approached defendant's car they saw defendant turn his entire body to the right, between the vehicle's bucket seats, and reach or lunge with both arms into the backseat. Bohlen estimated that defendant was turned around in this fashion for five to ten seconds, while Bell estimated that it was three to five seconds. Defendant, on the other hand, testified that he did not reach into the backseat at any time. Instead, he claimed that after pulling over he looked to the left as the officers approached.

Bohlen ordered defendant and his passenger to put their hands where he could see them, and both men complied. Bohlen then approached on the driver's side and Bell on the passenger's side. Bohlen further stated that he recognized defendant as a member of the Latin Kings street gang based upon his prior viewing of photographs of gang members and the tattoos on defendant's forearms. On Bohlen's request, defendant gave Bohlen his driver's license and informed Bohlen that he was the owner of the car. Bohlen testified that defendant seemed excessively nervous, with his hands shaking and his eyes darting from side to side. Bohlen testified that he was concerned that, based upon defendant's nervousness, defendant was possibly going to re-start his vehicle and flee. Based on these circumstances, the officers asked defendant and the passenger to exit the vehicle, patted them down, and had them sit

2

on the curb behind the car.

According to defendant, Bohlen then searched the vehicle for about fifteen minutes, advising Bell that the car was "clean." Again according to defendant, Bell asked Bohlen if he had searched the trunk, and Bohlen then used defendant's keys to open the trunk, at which point he discovered a sawed-off shotgun in the area of the trunk closest to the rear of the vehicle. Bohlen also discovered a shopping bag containing fireworks in the trunk area close to the backseat.

According to Bohlen, after defendant and the passenger were placed on the curb, he searched the vehicle and immediately noticed that it was completely clean, i.e. free of any trash or objects. Bohlen testified that, in light of defendant's movements in the backseat of the vehicle at the outset of the stop, he was concerned when he found the backseat of the vehicle empty. Specifically, Bohlen stated that he believed defendant's movements may have been related to the presence of a weapon in the vehicle. Bohlen testified that in reaching this conclusion he considered: (1) defendant's erratic driving, (2) the previous evening's shooting, (3) defendant's suspected gang affiliation, and (4) defendant's excessive nervousness during the stop. Bohlen stated that during his search of the passenger compartment he noticed a cloth handle on the backseat. From the front seat, reaching into the back, Bohlen pulled the handle and the backseat folded down flush to the back of the front seat. Bohlen testified that he then discovered the bag of fireworks and a striped bath towel. Bohlen stated that he reached several feet into the trunk area to the towel and upon touching it felt what he believed to be the trigger-guard of a firearm. Bohlen testified that he then took the keys from the ignition, opened the trunk from the back of the car and retrieved a sawed-off shotgun from inside the towel. The officers then placed defendant under arrest.

3

## II. DISCUSSION

Defendant does not contest the legality of the traffic stop based on the nature of his driving. See, e.g., Phelan v. Village of Lyons, 531 F.3d 484, 488 (7th Cir. 2008) ("A stop is reasonable if the officer has 'probable cause to believe that a traffic violation has occurred.'") (quoting Whren v. United States, 517 U.S. 806, 810 (1996)). Nor does he contest the officers' decision to remove him and the passenger from the car and pat them down. See, e.g., United States v. Soares, 521 F.3d 117, 120 (1st Cir. 2008) (approving officers' decision to remove and pat-down occupants of car based on their erratic and furtive movements, and the location of the stop). Rather, the issue in dispute is whether Officer Bohlen reasonably searched the trunk of defendant's car.

In his objections, defendant concedes that the search would be permissible under the Fourth Amendment if the officers had a reasonable suspicion that the search was necessary to protect themselves or others in the area. See Michigan v. Long, 463 U.S. 1032, 1049 (1983) (holding that a search of the passenger compartment of an automobile is permissible if the officer possesses a reasonable belief that the suspect is dangerous and may gain immediate control of a weapon); see also United States v. Evans, 994 F.2d 317, 321 (7th Cir. 1993) (upholding warrantless search of automobile where officers stopped defendant for unsafe driving in a high crime area, then saw him make a furtive gesture).[1] Defendant further concedes that the trunk in which the firearm was discovered was accessible from the passenger compartment of the car by pulling down on the cloth handle attached to the backseat. See United States v. Arnold, 388 F.3d 237, 240-41 (7th Cir. 2004) (holding that a

---

[1] Officers may conduct such a search even if the suspect has been removed from the vehicle. See, e.g., United States v. Palmer, 360 F.3d 1243, 1246-47 (10th Cir. 2004).

4

permissible search under Long may extend to the trunk of an automobile that is accessible from inside the passenger compartment). Finally, defendant agrees given the other circumstances confronting the officers – the recent violence in the area, defendant's apparent gang membership, his nervousness and erratic driving – that if he did, in fact, reach towards the trunk area of the car as the officers testified, then the search would be reasonable. I therefore must determine which version of events is more credible.

     I agree with the magistrate judge that the officers' version is more credible. As the magistrate judge noted, although they were sequestered during the hearing, the officers testified clearly and consistently as to what they observed. Nor did they appear to make any attempt to stretch their testimony to bolster the search, by claiming that they saw defendant placing or retrieving anything in or from the trunk area, or pulling down on the cloth handle, for instance. Defendant's testimony, on the other hand, contained implausibilities that undercut his credibility. For instance, defendant claimed that it took Bohlen fifteen minutes to search the interior of the car, even though by all accounts there was virtually nothing in the car save a few papers. Defendant further claimed that Bell directed Bohlen to search the trunk after Bohlen stated that the car was clean. It seems unlikely that Bell would have directed Bohlen, the lead and more experienced officer.

     In his objections, defendant argues that the officers' testimony was illogical: given that there was nothing in the backseat, there was no conceivable reason for him to reach or lunge towards that area; in fact, he contends, such would have only drawn attention to the contraband in the trunk. As the magistrate judge discussed in his recommendation and as the government posits in its response to the objections, there are various reasons why defendant would have made such movements; the fact that defendant's movements may have been ill-

5

advised does not mean that he did not make them.

Defendant notes that from where he was sitting it was physically impossible for him to reach the gun in the back of the trunk. However, he concedes that he was able to reach the trunk from the interior of the car, and he makes no argument that Officer Bohlen exceeded the permissible scope of the search when he felt the trigger lock inside the towel. Once Bohlen made that discovery, it was reasonable for him open the trunk from the back of the car in order to seize the shotgun. See United States v. Brown, 133 F.3d 993, 999 (7th Cir. 1998); see also United States v. Johnson, 383 F.3d 538, 545 (7th Cir. 2004) (citing Carroll v. United States, 267 U.S. 132 (1925)).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 17) is **ADOPTED**, and defendant's motion to suppress (R. 8) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 8th day of January, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge